# THE PRESIDENT, DIRECTORS AND COMPANY OF THE FARMERS BANK OF MARYLAND, vs. RICHARD C. BOWIE.

A protest of a note payable at a bank which stated that written notices were addressed to endorsers "*informing each of them that he was held liable for the said note,*" is not sufficient evidence of notice to bind the endorser, because it omits to inform him that the note was *due and unpaid*.

Proof by the notary that he "*directed the following notice of protest,*" to the endorser, without stating of what the notice consisted is wholly insufficient to bind the endorser, because it does not appear when or that the notice was *ever* sent to him through the post office, or otherwise.

By the proviso to the 1st section of the act of 1830, ch. 186, a procedendo cannot be granted where the judgment is affirmed upon the appeal of the plaintiff, in any case "where the judgment of the Court of Appeals would be a bar to a new action brought upon the *same cause.*"

The case of the affirmance of a judgment for the defendant in an action upon a promissory note is directly within this proviso; the only action which could be brought on the note is that of *assumpsit*, and to such an action the judgment would be a flat bar; the pleadings would show the course of action to be the same in both cases.

The act of 1830, ch. 186, applies to cases where a different action may be brought, and to actions of ejectment, and petitions for freedom.

APPEAL from the Circuit Court for Prince George's County.

This was an action of *assumpsit*, brought by the appellants as holders against the appellee, as endorser of a promissory note drawn by Robert Wright for $895, dated "Bladensburg, Aug. 31st, 1844," at four months, and "negotiable and payable at the Farmers Bank of Maryland, Annapolis." The plea was *non-assumpsit*.

*Exception.* The testimony offered by the plaintiff in regard to notice of protest is stated in the opinion of this court. The notary, Cowman, proved, moreover, that it was the custom and usage of said bank, when the residence and post office of the maker or endorser of a protested note was unknown, to inquire therefor at said bank, which he did in this instance, in conformity with said usage and custom, and not being able after such inquiry to ascertain either the residence

or post office of the defendant, he directed, &c., (as stated in the opinion of this court.) He further proved that said note had been several times renewed, and protested for non-payment, and the notices had always been directed to the defendant at Bladensburg, and attended to by having the note renewed. The court below (CRAIN, J.,) refused the plaintiff's prayer and granted the instruction stated in the opinion of this court, to which refusal and instruction the plaintiff excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON J.

*C. C. Magruder* for the appellants.

1st. The evidence was sufficient to prove notice of the demand and non-payment to charge the endorser. The notary proves that he directed *"notice of protest"* to the endorser at Bladensburg. The words *notice of protest* import everything necessary to charge the endorser, (4 *Gill,* 194, *Barry vs. Crowley.* 1 *Md. Rep.,* 504, *Hunter vs. Van Bomhorst.* 3 *Do.,* 251,) and the notarial protest might therefore have been out of the case altogether. The direction of the notice was proper, reasonable diligence was used. *Chitty on Bills,* 525. The usage of the bank was proved and forms part of the contract of the parties. 1 *H. & J.,* 239. *Story on Prom. Notes, sec.* 351. When reasonable diligence has been used, and the place cannot be found, the notice may be directed to the place where the note *bears date.* 1 *Pet..* 89. 12 *Mass.,* 172.

2nd. Under the charter of the bank 1804, *ch.* 61, of which the court will judicially take notice, (6 *H. & J.,* 47; 4 *G. & J.,* 1,) the evidence was sufficient to prove notice of demand and non-payment to charge the defendant. The 26th section of that act prescribes the manner and proof of notice, and the note in this case was made in the form prescribed by that section. The bank is a house owned by some person in the

city of Annapolis, and the act does not say a *dwelling house*. That the presentment and demand was made by the proper person. See *Chitty on Bills*, 397, 398, 399, and cases there cited. 3 *Conn.*, 489. 1 *Pick.*, 401. 18 *Johns.*, 230.

3rd. This court will allow to be filed herein the affidavit of the notary examined in the case supplying the notice of protest referred to, but omitted in the record; and if that thus admitted, with the other evidence, prove notice of demand and non-payment to charge the defendant, they will reverse the judgment. (The affidavit referred to in this point was that a certain notice of protest set out and printed with the appellant's points was the one used on the occasion of the protest of this note.) 1 *Md. Rep.*, 59.

4th. Under the circumstances of this case, this court will send it down under a *procedendo*. Act of 1830, *ch.* 186. 7 *H. & J.*, 272. 1 *H. & G.*, 239. 4 *Gill*, 318, *Sedwick vs. Parker*. 2 *Md. Rep.*, 245, *Kennerly vs. Wilson*.

*J. M. S. Causin* and *Daniel C. Digges* for the appellee, were requested by the court to confine their arguments to the question of awarding a *procedendo*. This court is strictly an *appellate* tribunal. (2 *G. & J.*, 306, *Davis vs. Leab*. 2 *Md. Rep.*, 245,) and before it can send the case back, the *record* must disclose the merits. 2 *Md. Rep.*, 260. It will not send it back for the purpose of enabling the plaintiff to get *new testimony*. The record shows no merits—the notary does not state *when* the notice was sent as was done in 4 *Gill*, 198—this is *essential*. The affidavit of the notary cannot be looked to. 1 *H. & G.*, 239. 9 *Gill*, 442. It is simply a case where the plaintiff failed for *want of proof*, and if there had been any new proof discovered, he should have applied to the court below for a *new trial*. But, again, the judgment of this court would be a *flat bar* to any new action upon the same cause, and in such a case the act of 1830, ch. 186, expressly *forbids* the procedendo to be awarded. Even if there should be a reversal the court will not send the case back if they see the plaintiff cannot recover. (4 *G. & J.*, 401.) And in this connection the charter of the bank comes in question. As to the form

of the notes under a similar charter, (act of 1811, ch. 193,) see 5 *H. & J.*, 489. A corporation can do no act, make no contract, except those authorised by its charter, and by its agents, and in *such manner* as the *charter prescribes*. 13 *Pet.*, 587. 2 *Kent's Com.*, 295. 5 *Conn.*, 563, 568. 7 *Wendell*, 34. The act says, sec. 20, the note *shall* be made *negotiable* at the bank, and *payable* at the house of some person in the city of Annapolis. There is an *evident distinction* between the place at which it is to be negotiable, and that at which it is to be payable.

*A. Randall* for the appellant, in reply.

The 20th section of the charter was a *privilege* not a *restriction*, as will appear from the 16th and 28th sections where restrictions are imposed. This is a bank, and all the privileges pertaining to such institutions were intended to be given to it by this charter. The charter does not say the note must not be made payable at the bank. The object was to have it payable at some place where money could be deposited to meet it when it fell due; such a place is the banking house itself. In construing this act the court will look at the scope and object of the grant. The note in this case is drawn in conformity with the 20th section of the charter, and the effect of it is to bind the endorser.

The justice of the case is with the plaintiff, and this court has said in *Kennerly vs. Wilson*, 2 *Md. Rep.*, 245, that in all such cases they will send the case back. The act of 1830, ch. 186, is but a re-enactment of that of 1826, ch. 200. The meaning of the *proviso* to the former act is, if the *opinion* of this court covers the whole case, then it will be not sent back. If the *technical affirmance* of the judgment be what is meant, then a case never would be sent back, for it is difficult to conceive of a case where the judgment of this court would not be a bar to a new action for the same cause.

LE GRAND, C. J., delivered the opinion of this court.

This is an action of *assumpsit*, instituted by the appellants,

as holders of a promissory note, drawn by Robert Wright and endorsed by the appellee and others.

The plaintiff, after having proved the making of the note and the endorsement thereof by the appellee, further proved by Richard I. Cowman, notary public, that on the day on which the same became due he presented it at the Farmers Bank, at Annapolis, (where the same was made payable,) and demanded payment, and on payment being refused— according to the statement of the record—"*he directed the following notice of protest*, (no notice of protest filed,) *of this note to the defendant at Bladensburg where the said note was dated.*" The plaintiff also gave in evidence the protest of the note, wherein the notary says he "addressed a written notice to each of the endorsers of the said note therein *informing each of them that he was held liable for the payment of the said note, and directed them respectively at Bladensburg*," &c.

This constitutes all the testimony, in the record, of notice to the appellee as endorser.

At the trial below the plaintiff asked the court to instruct the jury, if they believed all the facts proven, the plaintiff was entitled to recover. This direction the court refused to give, but instructed the jury to the effect, that although they should believe all the facts proven, the plaintiff was not entitled to recover, there being no sufficient evidence of notice of demand and non-payment.

We think the court acted rightfully in rejecting the prayer and in granting the instruction which it did. So far as the notice is concerned *which is set out in the protest*, it is identically the same as that in *Graham vs. Sangston*, 1 *Md. Rep.*, 59, and the decision in that case is conclusive on the one we are now considering so far as this question is involved. The defect of the notice there, as here, consists in the omission to inform the endorser the note was *due and unpaid*.

The other evidence of notice is, that the notary "directed the following notice of protest," without stating of what the notice consisted. Moreover, it does not appear from this part of the testimony, nor, indeed, from any other part, except

that contained in the protest, *when* any notice was placed in the post office. The notary merely proves he *directed* a notice, a copy of which is not given. This evidence is wholly insufficient to fix the liability of the endorser, because it does not appear ever to have been sent to the party through the post office, or otherwise. This case is wholly unlike that of *Barry, et al., vs. Crowley*, 4 *Gill*, 194. There the holder relied on the *prima facie* evidence given to the protest of the notary by the act of 1837, ch. 253, and the protest stated, "on the same day, I, (the notary,) *deposited* in the post office, Washington city, *notice of protest* to P. Crowley," &c. In the case now before us, the notice which was sent was insufficient, and it does not appear any other was sent, although the notary swears he "directed" notice of protest to the endorser. Now were it conceded, on the authority of the case in 4 *Gill*, that the law would intend, *prima facie*, "notice of protest" to include everything necessary to fix the liability of the endorser, nevertheless it would be incumbent on the holder to show such notice was deposited in the post office, or delivered, within the time limited by law, to the party to be charged, and there is a total failure of proof to show it has been done.

These being our views, the judgment of the circuit court must be affirmed. But inasmuch as this court, under a *procedendo*, remanded the case of *Graham vs. Sangston*, to enable the plaintiff to supply the required proof, it is asked, although the judgment be affirmed, that a *procedendo* be awarded in this case. This case is not like that of *Graham vs. Sangston;* there the judgment was reversed on the appeal of the plaintiff, whilst here it is affirmed on his appeal. The only act under which the writ could be asked is that of 1830, ch. 186. It authorises the issue of a *procedendo* in cases of appeals by plaintiffs upon bills of exception, when the judgment excepted to shall be affirmed, if it shall appear to the Court of Appeals that the substantial merits of the case are not determined by the judgment. But this power is not unlimited. It cannot

be exercised "*where the judgment of the Court of Appeals would be* a bar to a new action brought *upon the same cause.*"

We regard this case as falling directly within the language and meaning of the proviso. The only action which could be brought on the note is that of *assumpsit*, and to such an action the judgment would be a flat bar; the pleadings would show the cause of action to be the same in both cases. This was not so in *Parker vs. Sedwick*, 4 *Gill*, 318, as is made manifest by the argument of the counsel for the plaintiff in that case. It was to such cases, and to actions of ejectment and petitions for freedom, that the act of 1830, ch. 186, was intended to apply. *Beall and others, vs. Beall and others,* 7 *Gill,* 233.

*Judgment affirmed and procedendo refused.*