DORIS NEUENSCHWANDER *v.* WASHINGTON SUBURBAN SANITARY COMMISSION ET AL

[No. 168, October Term, 1945.]

70

*Decided July 23, 1946.*

The cause was argued before DELAPLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*S. Marvin Peach,* with whom was *Bird H. Dolby* on the brief for the appellant.

*W. Carroll Beatty* and *Nicholas Orem, Jr.,* with whom were *Duckett, Gill & Anderson* and *T. Howard Duckett* on the brief, for the Washington Suburban Sanitary Commission.

*W. Carroll Beatty* and *Caesar L. Aiello* on the brief for the Mayor and City Council of Hyattsville.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was brought by Doris Neuenschwander in the Circuit Court for Prince George's County against Washington Suburban Sanitary Commission and the Mayor and City Council of Hyattsville to recover damages for injuries sustained on June 23, 1944, when she stepped upon the metal top of a sewer manhole along the sidewalk on Madison Street in Hyattsville. She alleged in her declaration that the metal top turned upwards, thrusting her left leg into the manhole, throwing her to the ground and severely wrenching her body;

and that she has suffered continuous pain, has spent large sums of money for medical and hospital treatment, and has been advised to undergo a surgical operation. ·She further alleged that the manhole was maintained negligently by defendants and was in an unsafe condition for pedestrians. Defendants pleaded that, because of the fact that they are municipal corporations, 'they are not liable for damages. Plaintiff demurred to the pleas, and the Court sustained the demurrers on the ground that the declaration failed to allege that defendants knew or should have know of the defective condition.

The law is established that a municipal corporation may be held liable for injuries caused by its negligence in failing to keep the streets and sidewalks under its control reasonably safe for travel in the ordinary manner, and in preventing and removing any nuisance affecting their use and safety. *Cordish v. Bloom,* 138 Md. 81, 85, 113 A. 578; *Mayor and City Council of Baltimore v. Eagers,* 167 Md. 128, 136, 173 A. 56; *Mayor and City Council of Baltimore v. Thompson,* 171 Md. 460, 189 A. 822. But a municipal corporation is not liable for injuries caused by the defective condition of a street, unless it is shown that it had actual or constructive notice of such condition. Constructive notice is such notice as the law imputes from the circumstances of the particular case. It is the duty of municipal authorities to exercise active vigilance over the streets to see that they are kept in a reasonably safe condition for public travel. After a street has been out of repair so that the defect has become known and notorious to those traveling the street, and there has been full opportunity for the municipality to learn of its existence and repair it through its agents charged with that duty, the law imputes notice to it and charges it with negligence. *Keen v. Havre de Grace,* 93 Md. 34, 48 A. 444; *City of Annapolis v. Stallings,* 125 Md. 343, 93 A. 974; *Com'rs of Delmar v. Venables,* 125 Md. 471, 476, 94 A. 89 But the declaration in a suit against a municipal corporation alleging injuries

caused by a defect in a street need not expressly allege that the corporation had notice of the existence of such defect, for the charge of negligence implies a failure of the corporation to repair the street after actual or constructive notice of the need for such repair, and no such allegation is included in the form of declaration recognized by statute as sufficient in a case of this nature. Code, 1939, Art. 75, Sec. 28 (37); *Washington, B. & A. Electric R. Co. v. Cross*, 142 Md. 500, 505, 121 A. 374.

After the Court sustained the demurrers to the declaration, plaintiff filed an amended declaration. The first count was similar to the original declaration, but the second count alleged that defendants knew or, by the exercise of reasonable care, should have known of the dangerous condition of the manhole and metal top. In the meantime defendants learned that the Legislature of Maryland had passed an Act in 1943, applicable to Prince George's County, providing that no suit for damages shall be maintained against a municipal corporation unless written notice of the claim shall be presented within 90 days after the injury or damage is sustained. Defendants accordingly withdrew their pleas and filed demurrers alleging that plaintiff had failed to comply with the Act of 1943. The Act provides: "No action shall be maintained and no claim shall be allowed against any county or municipal corporation of Maryland, for unliquidated damages for any injury or damage to person or property unless, within ninety days after the injury or damage was sustained, written notice thereof setting forth the time, place and cause of the alleged damage, loss, injury or death shall be presented either in person or by registered mail by the claimant, his agent or attorney, or, in case of death, by his executor or administrator, to the City Solicitor of Baltimore City, the County Commissioners, or the corporate authorities of the municipal corporation, as the case may be. The provisions of this section shall only apply to Caroline, Montgomery and Prince George's Counties." Acts of 1943, Ch. 809, Code, Supp. 1943, Art. 57, Sec. 18.

On account of plaintiff's failure to allege compliance with the statute, the Court sustained the demurrers and entered judgment for defendants. It has been questioned on this appeal whether Washington Suburban Sanitary Commission is a municipal corporation within the contemplation of the Act. The word "municipal" is derived from *"municipium,"* a city having the right of Roman citizenship, governed by its own laws in respect to local affairs but united to the republic by ties of sovereignty and general interest. Likewise in the early law of England, the term was applied to self-governing cities and towns. In later years, however, its application was extended to include the internal government of the State. So, a municipal corporation is now defined as a department of the government of the State, created by the Legislature with political powers to be exercised for the public welfare. Hence, this Court recognizes that the term "municipal corporation" is synonymous with "public corporation." *Phillips v. City of Baltimore,* 110 Md. 431, 438, 72 A. 902, 25 L. R. A., N. S., 711. In addition, the word "municipality" is frequently used as a synonym of "municipal corporation." *Lease v. Upper Potomac River Commission,* 179 Md. 543, 20 A. 2d 498; 1 McQuillin, Municipal Corporations, 2d Ed., Sec. 128. It is universally recognized that every municipal corporation is subject to absolute control by the Legislature. However great or small its sphere of action, it remains the creature of the State exercising privileges and powers subject to the sovereign will. *Johnson v. Luers,* 129 Md. 521, 99 A. 710; *City of Trenton v. State of New Jersey,* 262 U. S. 182, 43 S. Ct. 534, 537, 67 L. Ed. 937, 29 A. L. R. 1471. The Maryland Legislature has declared the county commissioners of every county in the State to be a corporation (Code, 1939, Art. 25, Sec. 1), and the Court of Appeals considers them to be a municipal corporation. *Talbot County Com'rs v. Queen Anne's County Com'rs,* 50 Md. 245, 259; *Gordon v. Com'rs of Montgomery County,* 164 Md. 210, 213, 164 A. 676; *Maryland Racing Commission v. Maryland Jockey Club,*

176 Md. 82, 87, 4 A. 2d 124, 479.  Compare *Clauss v. Board of Education of Anne Arundel County*, 181 Md. 513, 30 A. 2d 779.

The attributes of a municipal corporation are possessed by Washington Suburban Sanitary Commission to an extent amply sufficient to bring it within that designation.  It was created in 1918 by an Act of the Legislature, Laws 1918, Ch. 122, by which the members of the Commission were constituted a body corporate with authority to construct, maintain and operate systems for water supply, sewerage, drainage, and refuse collection and disposal in a designated sanitary district in Montgomery and Prince George's Counties.  The Sanitary Commission has authority to appoint all employees necessary to carry out the purposes of the Act.  It can purchase land and exercise the power of eminent domain.  It is also empowered to issue bonds, and to determine the amount to be raised by taxation for its purposes in Montgomery and Prince George's Counties.  It is expressly authorized to enter into contracts with the Commissioners of the District of Columbia or other Federal officials for the connection of its water supply, sewerage and drainage systems with those of the District of Columbia in order to obtain water by purchase from the District of Columbia or to dispose of the sanitary district's sewage and drainage.  There is no question that the Legislature had authority to create this municipal corporation and to vest it with appropriate powers to carry on its work essential to the health and welfare of the people in the designated district.  *Dahler v. Washington Suburban Sanitary Commission*, 133 Md. 644, 106 A. 10.  Of course, if an agency is formed to operate a water supply or sewerage system merely as an auxiliary of a city or county government, it would not be a municipal corporation, because it is not vested with political powers. *O'Leary v. Board of Fire & Water Com'rs of Marquette*, 79 Mich. 281, 44 N. W. 608, 19 Am. St. Rep. 169.  But a water supply or sanitary district is unquestionably a municipal corporation when it is incorporated by the Legislature and clothed

with essential powers to serve as a separate department of the State. *Gasaway v. North Branch Lake Fork Special Drainage District,* 339 Ill. 103, 170 N. E. 721; *Chicago & Eastern Illinois R. Co. v. Sanitary District of Bloom Township,* 350 Ill. 542, 183 N. E. 585; *Sternberg v. Wakonda Drainage and Levee District,* 7 Cir., 33 F. 2d 451. We specifically hold that Washington Suburban Sanitary Commission is not deprived of its status as a municipal corporation by the fact that its territorial limits are embraced within the limits of Montgomery and Prince George's Counties. This status is analogous to those situations in Connecticut where a town is coterminous in territory with a city, and yet both the town and the association are held to be municipalities possessing individual, though somewhat interrelated, attributes and each exercising distinct powers and performing different duties. *Sachem's Head Property Owners' Ass'n v. Town Guilford,* 112 Conn. 515, 152 A. 877.

It is a fundamental doctrine that the Legislature may grant or deny to individuals a right of action against municipal corporations for injuries resulting from the negligent manner in which streets are maintained. When the Legislature creates a municipal corporation as part of the machinery of government of the State, it is within its province to adjust the relative rights of the corporation and the citizens. The Legislature has thus the power to enact a statute requiring that, before suit for damages shall be instituted against a municipal corporation, a written notice of the claim shall be presented to the municipal authorities within a specified period after injury or damage is sustained. *Engle v. Mayor and City Council of Cumberland,* 180 Md. 465, 470, 25 A. 2d 446; *MacMullen v. City of Middletown,* 187, N. Y. 37, 79 N. E. 863, 11 L. R. A., N. S., 391. In order to maintain such an action, the declaration must allege that the notice prescribed by the statute was duly presented, for the notice is a condition precedent to the right to maintain the suit. If the declaration does not contain such an allegation, the defendant can object either by demurrer

or plea. *Engle v. Mayor and City Council of Cumberland,* 180 Md. 465, 469, 25 A. 2d 446; *Greenleaf v. Inhabitants of Norridgwock,* 82 Me. 62, 19 A. 91; *Forbes v. Town of Suffield,* 81 Conn. 274, 70 A. 1023; *Reinig v. City of Buffalo,* 102 N. Y. 308, 6 N. E. 792; *Daniels v. Racine,* 98 Wis. 649, 74 N. W. 553.

Appellant claimed that the Act of 1943 is invalid because it does not comply with the provision in Article III, Section 29, of the Constitution of Maryland that "every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title." She contended that the Act embraces two subjects: (1) repeal of a local law relating to Montgomery County, and (2) the enactment of a new section to be added to Article 57 of the Code. The local law provided that no action for unliquidated damages shall be maintained against the Board of Commissioners of Montgomery County unless, within 90 days after the injury or damage is sustained, the claimant gives notice in writing to the County Commissioners of the time, place, cause and circumstances of such injury or damage, and a report thereon is made by a State or county police officer in the regular course of duty. Acts of 1941, Ch. 405. It is clear that the local law and the general law are germane, and therefore there is no merit in appellant's contention. If all the sections of a statute, however numerous they may be, are germane and have reference to the subject described in the title, the statute will be considered as embracing but a single subject and as satisfying the requirement of Article III, Section 29, of the Constiution; *Curtis v. Mactier,* 115 Md. 386, 80 A. 1066; *Benesch v. State,* 129 Md. 505, 513, 99 A. 702. This requirement that every law shall embrace but one subject was written into the Constitution of 1851 because there had crept into our system of legislation a practice of engrafting upon measures of great public importance foreign matters for local or selfish purposes, and the members of the Legislature were often constrained to vote for such foreign provisions to avoid jeopardizing

the main subject or to secure new strength for it, whereas if these provisions had been offered as independent measures they would not have received such support. In this way the people of the State were frequently inflicted with pernicious legislation. Very often the foreign matters were incorporated into the law stealthily, especially during the haste and confusion that always prevailed near the close of the session, and in this way the statute books contained many enactments which few of the members of the Legislature knew anything about. *Davis v. State,* 7 Md. 151, 160, 61 Am. Dec. 331. We find no objection to the codification of the Act of 1943 under Limitation of Actions. While this Act requiring that a notice be presented to the municipal officials actually creates a condition precedent to the right to maintain an action for damages, nevertheless it is germane to, and has the effect of, a statute of limitations. *Bernreither v. City of New York,* 123 App. Div. 291, 107 N. Y. S. 1006, affirmed 196 N. Y. 506 89 N. E. 1096; 4 Dillon, Municipal Corporations, 5th Ed., 2816.

Appellant also urged that the subject of the Act is not sufficiently described in its title. The requirement that every law shall be described in its title was included in the Constitution of 1851, and again in the Constitutions of 1864 and 1867, as a safeguard against ill-considered and improper legislation. As bills introduced in the Legislature are usually read by their titles only, and the titles only are printed in the Journals of the Senate and House of Delegates, the framers inserted this provision in the Constitution to assist members of the Legislature in finding out the nature of the bills and watching their course intelligently, and also to inform the citizens of the State about the proposed legislation and to give them an opportunity to appear before the committees of the Legislature. *Stiefel v. Maryland Institution for Instruction of Blind,* 61 Md. 144, 148; *Painter v. Mattfeldt,* 119 Md. 466, 473, 474, 87 A. 413; *Weber v. Probey,* 125 Md. 544, 94 A. 162. In 1889 Chief Judge Alvey observed with regret that the Legislature had not been complying strictly with

the mandate of the Constitution, but had passed many Acts of great importance with titles which were "exceedingly deficient in definite and clear description of the subject-matter of the act," but he said that the Court will never defeat the will of the Legislature by striking down an Act on this account if by any construction it can possibly be sustained. *State v. Norris*, 70 Md. 91, 96, 16 A. 445, 446. Every presumption should be indulged in favor of the constitutionality of a statute, and the Court should not declare a statute unconstitutional unless it is plainly repugnant to the Constitution. *Painter v. Mattfeldt*, 119 Md. 466, 472, 87 A. 413; *Rutledge v. Greater Greenville Sewer District*, 139 S. C. 188, 137 S. E. 597.

The title of the 1943 Act, which was not changed during its course through the two Houses of the Legislature as Senate Bill No. 394, reads as follows: "An Act to repeal Section 198B of Article 16 of the Code of Public Local Laws of Montgomery County (1939 Edition), as said section was enacted by Chapter 405 of the Acts of 1941, and to add a new section to Article 57 of the Annotated Code of Maryland (1939 Edition), title 'Limitation of Acts,' said new section to be known as Section 18, and to follow immediately after Section 17 of said Article, specifying the time within which counties and municipalities of Maryland must be notified of claims for damages and the method of giving such notice." Appellant objected to the title on the ground that it does not specify the time within which notice shall be presented. But the title of an Act need not give an abstract of its contents. Only the purpose must be described in the title, not the means or procedure by which the purpose is to be carried into effect. *Goldsmith v. Mead Johnson & Co.*, 176 Md. 682, 688, 689, 7 A. 2d 176, 125 A. L. R. 1339. The test in each case is whether the statute is sufficiently explicit to put interested persons on notice that the thing intended to be done by it is in fact accomplished. *Miggins v. Mallott*, 169 Md. 435, 441, 182 A. 333. Before a statute will be held invalid on account of defective de-

scription in the title, something must be shown in the body of the Act entirely foreign to the subject matter described in the title in flagrant disregard of the constitutional provision. *State v. Archer,* 73 Md. 44, 20 A. 172; *Mylander v. Connor,* 172 Md. 329, 334, 191 A. 430.

It has long been the practice of the Maryland Legislature either to enact local laws or to exempt particular counties from the operation of general laws. *Stevens v. State,* 89 Md. 669, 674, 43 A. 929; *Mount Vernon-Woodberry Cotton Duck Co. v. Frankfort Marine Accident & Plate Glass Insurance Co.,* 111 Md. 561, 569, 75 A. 105, 134 Am. St. Rep. 636. The fact that the title of the 1943 Act does not designate any territorial limitation, while the body of the Act restricts its operation to Caroline, Montgomery and Prince George's Counties, does not invalidate the Act, since the title is broader than the body and does not mislead when the body is limited to those three counties. *Church Home and Infirmary v. Mayor and City Council of Baltimore,* 178 Md. 326, 334, 13 A. 2d 596. Notwithstanding that the Act does not apply to Baltimore City, it provides that the notice shall be presented to "the City Solicitor of Baltimore City, the County Commissioners, or the corporate authorities of the municipal corporation, as the case may be." We think the words "the City Solicitor of Baltimore City" may be treated as surplusage. For it is apparent that when the bill was amended on the floor of the Senate on March 30 by striking out the words "Baltimore City," the members of the Senate failed to strike out the words "the City Solicitor of Baltimore City" in the preceding sentence, and these words inadvertently remained in the bill when it was passed on April 3, the last day of the session. It is a settled rule of construction that a statute will not be held void on account of inadvertent omissions or surplusage or other obvious error, if the intention of the Legislature can be gathered from the whole statute, for otherwise the letter of the law would be made paramount to its spirit, and the purpose of the Legislature would be defeated. *Chesapeake & Ohio Canal Co. v.*

*Baltimore & Ohio R. Co.*, 4 Gill & J. 1, 90; *Levin v. Hewes*, 118 Md. 624, 634, 635, 86 A. 233.

Since the Act is constitutional, and plaintiff failed to allege that she presented the written notice as required by the Act, the judgment for defendants must be affirmed.

*Judgment affirmed, with costs.*