JEREMIAH O'LEARY v. THE BOARD OF FIRE AND WATER COMMISSIONERS OF THE CITY OF MARQUETTE.

*Municipal Corporations—Local corporation subservient of municipal purposes—Liability for negligence of servants.*

1. An incorporated board of water commissioners, the general and sole purpose of whose incidental powers is to examine and consider all matters relative to supplying a city with water, and which has no taxing powers, nor has the city power to give it any taxes, except such as will enable it to pay its bonds—which it is authorized to issue on a vote of the electors—and operating expenses, and whose property is not subject to execution, is not such an agency as can be officially liable to suits for the negligence of its servants.

2. The following propositions are summarized from the opinion of Mr. Justice CAMPBELL:

    *a*—Where a board of water commissioners are liable, as well as competent, to be impleaded, to make contracts, to hold property, to have a seal, and to make by-laws, and generally to do all legal acts which may be necessary and proper to carry out the effect, intent, and object of the creative act, although not in terms declared to be a corporation, the powers given them are in such language as to make them such.

    *b*—It has been settled in this State that there can be no municipal corporation that is not the direct representative of the people of its locality. *People v. Hurlbut*, 24 Mich. 44; *Commissioners v. Detroit*, 28 Id. 228; *Attorney General v. Detroit*, 29 Id. 108; *Allor v. Auditors*, 43 Id. 76; *Butler v. Detroit*, Id. 552; *Attorney General v. Councilmen*, 58 Id. 213; *Board v. Auditors*, 68 Id. 576.

    *c*—Cities and municipalities are not usually responsible in damages for the neglect of persons in public office, unless made so by statute (*Detroit v. Blackeby*, 21 Mich. 84); and it has been held in numerous cases that the statute liability cannot be enlarged. *Detroit v. Putnam*, 45 Mich. 263; *Keyes v. Village of Marcellus*, 50 Id. 439; *McKellar v. Detroit*, 57 Id. 158; *McArthur v. Saginaw*, 58 Id. 357; *Williams v. Grand Rapids*, 59 Id. 51.

    *d*—Where a city is engaged in making a work which is its private property as a municipality, and not a mere public easement, and is done under city employment or contract, it is responsible for injuries caused by neglect in its process of con-

struction, as it is for any such action as directly injures private property (*Detroit v. Corey*, 9 Mich. 165; *Pennoyer v. Saginaw*, 8 Id. 534; *Ashley v. Port Huron*, 35 Id. 296; *Defer v. Detroit*, 67 Id. 346); but it is not usually liable in other cases.

*e*—It is for the Legislature to determine how far, if at all, a body whose negligence, if it is so called, is imputed, and in no sense actual, shall be made subject to suit for the misconduct of its employés.

*f*—Imputed negligence is purely a question of public policy, and subject to legislative regulation.

Error to Marquette. (Grant, J.)  Argued January 16, 1890.  Decided January 24, 1890.

Negligence case.  Defendant brings error.  Reversed, without a new trial.  The facts are stated in the opinion.

*F. O. Clark*, for appellant.

*Mapes &, Kinkade*, for plaintiff.

CAMPBELL, J. Plaintiff was injured by falling into a ditch dug by the servants of defendant for laying water-pipes.  He recovered damages to an extent not held by the trial judge to be beyond the merits of the case; and, if defendant is liable at all, there seems to be nothing in the record to show error in holding the judgment regular and proper in law, although, as not uncommon in such cases, the jury gave the plaintiff the benefit of all the disputed facts.  But it is claimed that under the statutes regulating its powers, and those of the city of Marquette, the defendant cannot be held legally responsible for the negligence of its servants in an action in tort for damages.  That the individual wrong-doer, if there was one, by whose misconduct plaintiff was hurt, is responsible, is not disputed.  Whether the corporation in charge of the public ways is liable is not before us.  The sole question is whether this corporation, which is created to subserve certain important municipal purposes, has been made

responsible by law for such accidents, when, if not incorporated, it is not shown that it would be, is the only matter for our consideration; and the differences existing under different charters are such as to leave the matter to be decided by its own facts.

The defendant was incorporated by "An act to create a board of water commissioners in the village of Marquette, and to define its powers and duties," approved March 2, 1869. The subsequent incorporation of the city merely made the necessary changes to meet the change in government. Although not in terms declared to be a corporation, the powers given them are in such language as to make them such. They are liable, as well as competent, to be impleaded, to make contracts, and hold property, to have a seal, and make by-laws, and generally "to do all legal acts which may be necessary and proper to carry out the effect, intent, and object of this act." As all of their powers are confined legally to the scope of the statute, it is necessary to consider them. The members derive their appointment from the corporate body of the city, and not from the people. By section 6 they are required—

"To examine and consider all matters relative to supplying said [city] of Marquette with a sufficient quantity of pure and wholesome water for domestic use, also to provide suitable and efficient means for the extinguishment of fires."

This is the general and sole purpose of all their incidental powers. By subsequent sections they are empowered, under approval of the electors by vote on that question, to issue bonds to a limited extent, and, if unable to pay, to renew them. They are authorized to report to the city council, which is empowered, but not expressly required, to raise by tax any sums beyond the revenue of the board necessary to pay principal or interest on the

bonds, or "any deficiency in operating expenses." They are authorized, "after the necessary means have been procured, as herein provided," to purchase necessary lands and materials, and construct reservoirs, buildings, machinery, and fixtures to supply water, and to provide means for fire protection, and are given, for the purposes of the "fire department," the powers which were before possessed by the village. They are empowered to lay pipes for water, and to build hydrants, and to employ such persons as they deem necessary to perform their duties. They have power to levy water-rates on consumers on an equitable basis. They can procure lands by condemnation, where needed, and, on payment of the damages into the city treasury, may get the title. All materials contracted for or procured by them are exempt from execution.

It may be important, in this connection, to consider the legal position of this board in its functions. While it is a local corporation, created to serve municipal purposes, it is in no sense a municipal corporation, within the legal meaning of that term. It has been settled in this State that there can be no municipal corporation that is not the direct representative of the people of its locality. *Attorney General v. Councilmen,* 58 Mich. 213 (24 N. W. Rep. 887); *Allor v. Auditors,* 43 Id. 76 (4 N. W. Rep. 492); *People v. Hurlbut,* 24 Id. 44; *Board v. Auditors,* 68 Id. 576 (36 N. W. Rep. 743); *Commissioners v. Detroit,* 28 Id. 228; *Attorney General v. Detroit,* 29 Id. 108; *Butler v. Detroit,* 43 Id. 552 (5 N. W. Rep. 1078). In several of these as in other cases the doctrine has been recognized that the establishment of corporations to act as municipal boards or agencies did not give them any governmental municipal authority; and it is difficult to see how the incorporation or non-incorporation of the same board can change its character in the performance

of public duties. The furnishing of water and the establishment of a fire department are among the almost universal functions of cities; and the incorporation of water and fire boards appointed by the city is only a convenient way of removing that business from the constant interference of the ordinary city authorities, with such safeguards as are deemed best for that purpose.

It was held in *Detroit v. Blackeby,* 21 Mich. 84, that cities and municipalities are not usually responsible in damages for the neglect of persons in public office, unless made so by statute; and it has been held in numerous cases since that the statute liability cannot be enlarged. *Detroit v. Putnam,* 45 Mich. 263 (7 N. W. Rep. 815); *McKellar v. Detroit,* 57 Id. 158 (23 N. W. Rep. 621); *McArthur v. Saginaw,* 58 Id. 357 (25 N. W. Rep. 313); *Williams v. Grand Rapids,* 59 Id. 51 (26 N. W. Rep. 279); *Keyes v. Village of Marcellus,* 50 Id. 439 (15 N. W. Rep. 542). On the other hand, it was held in *Detroit v. Corey,* 9 Mich. 165, that where a city is engaged in making a work which is its private property as a municipality, and not a mere public easement, and done under city employment or contract, it is responsible for injuries caused by neglect in its process of construction, as it is for any such action as directly injures private property. *Pennoyer v. Saginaw,* 8 Mich. 534; *Ashley v. Port Huron,* 35 Id. 296; *Defer v. Detroit,* 67 Id. 346 (34 N. W. Rep. 680). But it is not usually liable in other cases. If this defendant was the representative directly of the people of Marquette to govern the city, with power to tax the people to carry out its plans, and held the property in its charge by proprietorship for its own purposes, it would seem to come within the Corey case. But a city represents the people for all the strict purposes of local government, and has power to raise its own revenue. The Legislature, in requiring towns, cities, and villages

to answer in damages for neglect to keep roads in repair, at the same time found it necessary to remove one of the recognized difficulties arising from lack of funds, by enabling them to provide by taxation for all such purposes. The purposes for which the present municipal agency was created are entirely for the protection of the city from fire, and for promoting its health by a supply of good water. The defendant is only enabled to obtain and hold such property as will be instrumental to that end. Every seizure of such property, if allowed, would be a diminution of the power of defendant to perform its public duties in regard to public health and safety. It not only has no taxing power, but the city has no power to give it any taxes, except such as will enable it to pay its bonds, and "meet any deficiency in operating expenses." Its property is not subject to execution. It cannot be true that such an agency can be officially liable to suits for liabilities, where it has no legal means of raising funds for payment. As already suggested, unincorporated boards are not so liable; and there is no obvious reason why the mere fact of incorporation, with no change of powers, can change their liabilities.

We cannot consider, on this record, any other question but the liability of this board. We know of no other instance in which a public board can be subjected to suit without means of raising money from the tax-payers. It is for the Legislature to determine how far, if at all, a body whose negligence, if it is so called, is imputed, and in no sense actual, shall be made subject to suit for the misconduct of its employés. There are many cases where such liability does not exist, except against the immediate individual wrong-doer. The person injured is not harmed any more where there are several persons liable than where there is only one. Imputed negligence is purely a question of public policy, and subject to legis-

lative regulation. No one can be bound by this record, except the immediate parties to it, and it would be improper to go beyond it.

The judgment should be reversed, with costs, and without a new trial.

CHAMPLIN, C. J., MORSE and LONG, JJ., concurred GRANT, J., did not sit.