BARLOW ET AL. *v.* FRIENDSHIP HEIGHTS
CITIZENS' COMMITTEE

[No. 2, September Term, 1975.]

*Decided October 1, 1975.*

The cause was argued before Murphy, C. J., and Singley, Smith, Levine, Eldridge and O'Donnell, JJ.

*Ferdinand J. Mack,* with whom were *Shadoan & Mack* on the brief, for Thelma Edwards; by *David N. Webster,* with whom was *Paul R. Connolly* on the brief, for Milton A. Barlow; by *John C. Joyce,* with whom were *Duckett, Orem, Christie & Beckett* on the brief, for Suburban Trust Company; and submitted on brief by *Paul Mannes, Leonard Meyers* and *Kaye Truxton Brooks* for Lawrence Myers and Eleanor Darlington and by *D. Warren Donohue* for Alfred McPhillips all appellants.

*Edward L. Genn* for appellee.

Singley, J., delivered the opinion of the Court.

In *Friendship Heights v. Funger,* 265 Md. 339, 289 A. 2d 329 (1972), we held that the Friendship Heights Citizens' Committee (the Committee), an elected body which administers a special tax area or district [1] consisting of

_____

1. Created by Chapter 131 of the Laws of 1914, which as amended, now appears in Montgomery County Code (1972, 1974 Cum. Supp.) §§ 66-1 through 66-12.

Section 66-4 was further amended by Chapter 242, § 1 of the Laws of 1974 which provided for the election of the Committee by registered voters of Montgomery County residing in the special tax area in lieu of election by "resident taxpayers upon real or personal property."

Chapter 779 of the Laws of 1975, effective 1 July 1975, which repealed and reenacted §§ 66-1 through 66-12, changed the name of Friendship Heights Citizens' Committee to Friendship Heights Village Council.

Maryland Code (1957, 1973 Repl. Vol.) Art. 25A (the Express Powers Act), § 5 contains a delegation of powers to charter counties, of which Montgomery is one.

From the grant of power to collect taxes for the operation of municipal services and to establish, modify, amend and abolish special taxing areas granted by § 5 (O) there is excepted any "modification or abolition of existing special taxing areas performing municipal services ... and governed or administered by a citizen's committee [or] ... a commission elected or appointed independently of the county council."

It would appear that the 1974 and 1975 amendments were adopted by the General Assembly in pursuance of this exception.

Friendship Heights and The Hills, two subdivisions located in Montgomery County, lacked the power to bring an action for declaratory and injunctive relief challenging the validity of the rezoning of an 18-acre tract adjacent to Friendship Heights, but beyond the limits of the special tax area.

Our reasoning was that the Committee was not expressly granted the power to sue and be sued, and was specifically excluded by Maryland Code (1957, 1973 Repl. Vol.) Art. 23A, § 9 (a) from the definition of a municipal corporation, which is expressly granted the power to sue and be sued by Art. 23A, § 1, and neither exercised any regulatory powers, nor was vested with any planning or zoning function.

We reserved for another day, however, a consideration of the question whether the power to sue could be implied from a power expressly granted the Committee.

In November, 1973, a new Committee which had been elected in May of that year brought two actions in the Circuit Court for Montgomery County for compensatory and punitive damages and for declaratory relief. Joined as defendants in one case were the seven individuals who had served at one time or another as members of the predecessor Committee.[2] In the other, the defendant was Suburban Trust Company (Suburban). The gravamen of the three-count declarations was that in 1969 the individual defendants had conspired with each other and with officers of Suburban to defraud the community and to breach their fiduciary duties by purchasing at prices, alleged to be excessive, property owned by members of the Committee; by paying real estate commissions on such purchases to one of its members; by borrowing from Suburban $1,250,000.00 to consummate the purchase; and by prepaying a portion of the loan through the redemption of a certificate of deposit in the amount of $300,000.00 held by the Committee which bore a higher interest rate than the loan.

The defendants, reading *Funger* as holding that the

2. The individual defendants other than Milton A. Barlow, who became a member of the Committee in July, 1970, were Thelma Edwards, Lawrence Myers, Alfred A. McPhillips, Eleanor Darlington, Arthur O. Dunn, and Margaret Steneck. It would appear that the last was never served.

Committee lacked the power to sue, filed motions raising preliminary objection as contemplated by Maryland Rule 323 a (6), which were granted, and the cases were dismissed. The Committee appealed to the Court of Special Appeals, which reversed the trial court in *Friendship Heights Citizens Comm. v. Barlow* and *Friendship Heights Citizens Comm. v. Suburban Trust Co.*, 23 Md. App. 635, 329 A. 2d 122 (1974). We granted certiorari in order that we might consider the matter.

We regard the question of the Committee's power to bring suit as answered, as did the Court of Special Appeals, by what we said in *Friendship Heights v. Funger, supra,* 265 Md. at 343, 289 A. 2d at 331:

> "We are not to be understood, however, as passing on the question whether the Committee has the power to sue for the breach of contract to construct a road, which might be implied from the express power which was granted to it, *cf. McRobie v. Town of Westernport,* 260 Md. 464, 466, 272 A. 2d 655 [, 656] (1971); *Perry v. Board of Appeals,* 211 Md. 294, 303, 127 A. 2d 507 [, 511] (1956), or whether it could sue or be sued under Code (1957, 1966 Repl. Vol.) Art. 23, § 138 in an action affecting the tax monies paid to it."

Concededly, *McRobie* dealt with the powers of the town of Westernport, a municipal corporation; *Perry,* with the powers of the Village of Chevy Chase, which was assumed for the purposes of the opinion to be a municipal corporation. Early on, we noted that the Committee is by statutory definition not a municipal corporation, nor can it be, because it exercises no political powers, *see Neuenschwander v. Washington Sanitary Comm'n,* 187 Md. 67, 75, 48 A. 2d 593, 597-98 (1946), citing *O'Leary v. Board of Fire & Water Comm'rs of Marquette,* 79 Mich. 281, 44 N. W. 608 (1890). If the Committee can be categorized at all, it would be as a quasi-municipal corporation,[3] to which has

---

3. Montgomery County Code §§ 66-8 and 66-11 (1972) provide, respectively, that the Committee "shall be considered in law as a

been transferred a segment of the State's power, in order that a particular purpose may be accomplished, *Baltimore v. State*, 15 Md. 376, 467 (1860). *See* 1 E. McQuillin, Municipal Corporations § 2.13 at 151 (3d ed. 1971 Rev. Vol.); 1 E. Yokley, Municipal Corporations § 8 at 17-18 (1956); 56 Am.Jur.2d *Municipal Corporations* §§ 12-13 at 79 (1971). Its function could be analogized to that of the board of managers of a drainage district provided for by Code (1957, 1973 Repl. Vol.) Art. 25, § 70 who, by § 71, are constituted a corporation and are expressly given the power to sue and be sued.

Despite the fact that the Committee is not for all purposes a corporation, some guidance can be derived from our cases dealing with municipal corporations which would seem to have an a fortiori application here. As early as *Rushe v. Hyattsville*, 116 Md. 122, 126, 81 A. 278, 279 (1911), our predecessors adopted as the law a formulation in 1 J. Dillon, Municipal Corporations § 89 at 145 (4th ed. 1890):

> "It is a general and undisputed proposition of law that *a municipal corporation possesses and can exercise the following powers and no others:*
>
> "First: Those granted in *express words*; second, those *necessarily or fairly implied* in or *incident* to the powers expressly granted; third, those *essential* to the declared objects and purposes of the corporation — not simply convenient, but indispensible." (Emphasis in original.)

This is the rubric relied upon by Judge Hammond, for the Court, in *Perry, supra*, 211 Md. at 303, 127 A. 2d at 511; by Judge Digges, in *McRobie, supra*, 260 Md. at 466, 272 A. 2d at 656; [4] and more recently in *Bowie Inn v. City of Bowie*, 274 Md. 230, 247, 335 A. 2d 679, 689 (1975) and in *New Carrollton v. Belsinger Signs*, 266 Md. 229, 237, 292 A. 2d 648, 652

corporation" and that the members shall not be individually liable for obligations incurred and that for purposes of borrowing money, the taxable area shall be considered as a corporation.

4. In the latter case, reliance was on the text of 1 J. Dillon, Municipal Corporations § 237 at 448 (5th ed. 1911) which is identical.

(1972). *See also Montgomery County Council v. Metropolitan District*, 202 Md. 293, 304, 96 A. 2d 353, 358 (1953); *Hanlon v. Levin*, 168 Md. 674, 677, 179 A. 286, 287 (1935). For a discussion of the *Dillon* rule, *see* Moser, *County Home Rule — Sharing the State's Legislative Power with Maryland Counties*, 28 Md. L. Rev. 327, 330 (1968).

We had occasion, in *Friendship Heights v. Funger, supra*, 265 Md. at 342, 289 A. 2d at 329, to comment on the grant of power to the Committee. Montgomery County Code § 66-2 (1972) provides that the tax levied at the rate of ten cents per $100.00 of assessable value and the additional tax of thirty cents per $100.00 of assessable value, which may be imposed in pursuance of § 66-3, shall be paid over to the treasurer of the Committee to be used for:

> "opening, improving, widening, maintaining, repairing and lighting the streets, roads, lanes, alleys, sidewalks, parking, drainage, sewerage, sanitation and other village improvements, and for furnishing police and fire protection, clerical and other public service, including the removal of ashes, garbage and other refuse and the disposal thereof."

Generally, the grant of express power, found in § 66-9, is limited to the authority:

> "to grade, pave, macadamize or otherwise improve any existing dedicated street, road or lane, or any county road, street or lane, within the said special taxing area which has beén or which may hereafter be acquired and opened for public use and to lay sidewalks and curbs thereon . . . ."

The threshold question in this case is whether the power of the present Committee to bring suit against the individuals who constituted its predecessor in office or against Suburban can be implied from any of the powers expressly granted. We think that it cannot because of the narrow scope of those powers. But this does not necessarily end the matter. Montgomery County Code (1972) § 66-4 prescribes that members of the Committee upon election

must take an oath "to diligently and faithfully discharge the duties of the office." From this can be implied a power to seek redress on behalf of the special tax area if it is believed that tax monies have been diverted to the benefit of individual members of the Committee or have been improperly expended with the concurrence of Suburban for illegal or ultra vires purposes. Even under the *Dillon* rule it has long been recognized that such powers as are necessary in the performance of a duty imposed or the accomplishment of a stated purpose may properly be implied. *See Heiskell v. Baltimore,* 65 Md. 125 at 148, 4 A. 116 at 118 (1886). On the facts before us, we need not reach the question whether suit could have been brought under Code (1957) Art. 23, § 138 which has been repealed by Chapter 378, § 1 of the Laws of 1975 and recodified as Code (1974), § 6-406 (A) of Courts and Judicial Proceedings Article.

In reaching this result, we strike the same cautionary note sounded by the Court of Special Appeals: we must not be understood as passing on the adequacy of the averments of the declaration or on whether, if proved, they may constitute a cause of action. Our holding is limited only to the Committee's capacity in the circumstances of this case to bring suit in the light of the contentions raised.

*Judgments of the Court of Special Appeals affirmed; costs of this appeal to be paid one-half by individual appellants and one-half by Suburban Trust Company.*